IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

OMAR R. SANTIAGO-MIRANDA,

Petitioner

v.

UNITED STATES OF AMERICA,

Respondent

CIVIL 12-1942 (PG)
(CRIMINAL 04-0414 (PG))

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON MOTION UNDER 28 U.S.C. § 2255

I.  FACTUAL AND PROCEDURAL BACKGROUND: TRIAL LEVEL

Petitioner Omar R. Santiago-Miranda, in this motion brought under 28 U.S.C. § 2255,  squarely attacks his trial attorney Lydia Lizarribar for coercing him into pleading guilty, for not listening to family members who told her of his bipolar order prior to his pleading guilty, and for not sufficiently substantiating his motion to withdraw plea based on actual innocence and lack of voluntariness filed eleven weeks after the guilty plea.  Finally, petitioner charges the attorney with substandard representation in pressing a plea agreement without having investigated adequately his criminal history, and thus underestimating the same, and for not objecting to the Pre Sentence Investigation Report (PSI) prior to sentence in that respect.  Consequently, not only did he not prevail on the motion to withdraw plea, but he was sentenced to 380 months imprisonment, 56 months

CIVIL 12-1942 (PG)                    2
(CRIMINAL 04-0414 (PG))

beyond the sentence he expected to receive, (and 20 months more than was received by any other co-defendant).

Petitioner also attacks the performance of retained appellate counsel Rafael Castro-Lang because he did not argue the issue of knowledge in relation to the guilty plea, and sentence exposure since the premise of Criminal History Category II was non-existent, based upon his criminal record, and which trial counsel was aware of.   Petitioner further alleges ineffective assistance of appellate counsel in failing to argue ineffective assistance of trial counsel for failing to press the issue of actual innocence.  (Docket No. 7 at 9).

Petitioner was indicted on September 29, 2005 in two counts of a nine-count Second Superceding Indictment.  (Criminal No. 04-414, Docket No. 48).  Twenty-one other defendants were also indicted.  Petitioner was charged in Count Five in that, from on or about the year 2000 and continuing until September 29, 2005, in the District of Puerto Rico and within the jurisdiction of this Court, the defendants and uncharged co-conspirators did knowingly and intentionally combine, conspire, and agree with each other and with diverse other persons to the Grand Jury known and unknown, to commit an offense against the United States, to wit, to knowingly and intentionally possess with intent to distribute kilogram quantities of controlled substances, that is to say, five kilograms or more of cocaine, a Schedule II Narcotic Drug Controlled Substance; fifty grams

CIVIL 12-1942 (PG)                    3
(CRIMINAL 04-0414 (PG))

or more of cocaine base, a Schedule II Narcotic Drug Controlled Substance; and one hundred kilograms or more of marijuana, a Schedule I Controlled Substances, as prohibited by Title 21, United States Code, Section 841(a)(1).   All in violation of 21 U.S.C. § 846.  (Criminal 04-414, Docket No. 48 at 4-5).  The location of the illicit enterprise was "Residencial[1] El Flamboyan" in Rio Piedras.   Petitioner is described as an enforcer in the enterprise. (Criminal No. 04-414, Docket No. 48 at 8).   Indeed, Overt Act Five notes that on March 10, 2004, Omar R. Santiago-Miranda and others as aiders and abettors  shot and killed Johan Mañon Feliz whom they believed was assisting law enforcement officers.  Count Seven charges petitioner and three others, aiding and abetting each other, with knowingly using, carrying and possessing a firearm in furtherance of a drug trafficking crime, that is, pistols and rifles of unknown brands, during and in relation to the commission of an offense punishable under the Controlled Substances Act, that is a violation of Title 21, United States Code, Sections 846 and 841(a)(1),  as charged in Count Five of this indictment, involving the conspiracy with intent to distribute cocaine and cocaine base,   Schedule II Narcotic Drug Controlled Substances,   and marijuana, a Schedule I Controlled Substances, all in violation of Title 18 United States Code Section 924(c)(1) and 2. (Criminal 10-414, Docket No. 48 at 14).

---

[1]A development of low-income housing units.

CIVIL 12-1942 (PG)                            4
(CRIMINAL 04-0414 (PG))

After initially entering a not guilty plea to the charges on November 16, 2009, where he was represented by attorneys Benjamin Ortiz-Belaval and Lydia Lizarribar[2],  petitioner entered a guilty plea on March 6, 2007, the date the case was set for jury trial.[3] (Crim. No. 04-414, Docket No. 581).  In court were his mother and aunt and other family members. The terms of the plea agreement called for the application of the following sentencing guidelines calculation:

> The defendant accepts responsibility for the amounts of narcotics charged in the Indictment but for the purposes of this Plea Agreement, Omar R. Santiago-Miranda accepts responsibility as an aider and abettor as to overt act number 5  of March 10, 2004, where he along with other aiders and abettors, shot and killed Johan Mañon Feliz[4].  The Base Offense Level is 43, pursuant to § 2D1.1(d)(1), as a cross-reference is made to § 2A1.1 (First Degree Murder).

Criminal No. 04-414, Docket No. 582 at 4).

A three-level reduction should petitioner clearly accept responsibility pursuant to U. S. S. G. § 3E1.1(b) was applied.   (Criminal No. 04-0414, Docket

---

[2]Attorney Lizarribar was retained by petitioner's family.

[3]None of the 22 defendants proceeded to trial and three other co-defendants were the last ones to entered guilty pleas on the same date: Omar Cortes-Rivera represented by attorney Wilfredo Rios, Jose A. Irizarry-Corchado represented by attorney Alexander Zeno, and who also moved to withdraw his guilty plea as to Count Five, but later withdrew the motion, and  Juan Carlos Arce-Valentin, represented by Assistant Federal Public Defender Joannie Plaza, all three of which had previously moved to change their pleas to guilty.

[4]Johan Mañon-Feliz had been charged as a felon-in-possession on February 6, 2004, and the complaint was dismissed on February 11, 2004 on motion of the United States.  (04-mj-00045 (ADC)).

CIVIL 12-1942 (PG)                           5
(CRIMINAL 04-0414 (PG))

No. 582 at 5).   With a Total Offense Level of 40, and considering a Criminal History Category of II as represented by petitioner and his attorney, the sentencing range would be 324 to 405 months.   The recommendation was 324 months, and if the Criminal History Category were higher, the recommendation would be no less than 360 months imprisonment.

On May 22, 2007, petitioner moved to withdraw his guilty plea in what appears to be a well-argued motion (raising his condition of bipolar depression for the first time).   The court was informed that petitioner was under the influence of prescribed medication at the time of the change of plea hearing, which prevented him from making a voluntary and knowing determination to plead guilty. (Criminal No. 04-414, Docket No. 652). Opposition followed. On April 15, 2008, in an opinion and order, the court denied the motion to withdraw plea without evidentiary hearing.   (Criminal No. 04-414, Docket No. 768).

Over petitioner's objection he was finally sentence on July 31, 2009 to 380 months imprisonment, based on a Criminal History Category of III (which called for a life sentence).  He was not given a reduction for acceptance of responsibility although the court mentioned that he had accepted responsibility before claiming his innocence (Criminal No. 04-0414, Docket Nos. 846, 848).  The remaining count was then dismissed.  The government continued to recommend 324 months imprisonment notwithstanding petitioner's clearly not accepting responsibility

CIVIL 12-1942 (PG)                      6
(CRIMINAL 04-0414 (PG))

which he had done at the plea hearing. (Criminal No. 04-414, Docket No. 856 at

10).  In court were his mother and his aunt (who raised him like a mother) and

other family members.  A notice of appeal followed.

## II. APPELLATE REVIEW

The court of appeals affirmed the conviction on August 18, 2011. United

States v. Santiago Miranda, 654 F.3d 130 (1st Cir. 2011).   On appeal, at which

he was represented by attorney Rafael Castro-Lang, the court held that the guilty

plea was not involuntary and that petitioner was not entitled to an evidentiary

hearing on his motion to withdraw guilty plea.  It considered the argument related

to excessive consumption of prescription drugs illegally obtained during detention

(Xanax)[5], bipolar disorder, familial coercion and lack of sleep.   It made a

painstaking review of the withdrawal of plea issue below, addressing the matter

on the merits.   Petitioner also argued the ineffectiveness of counsel in her

representation below but the court considered it baseless, in a footnote. United

States v. Santiago Miranda, 654 F.3d at 137 n.6.  The court made mention of the

lack of supporting evidence for the motion to withdraw guilty plea and the

presentation of information lacking in detail and corroboration to support the

motion.   United States v. Santiago Miranda, 654 F.3d at 139.   The court also

found the timing of the filing of the motion as suspect, representing more of a

_____

[5]Xanax is the brand name for alprazolam, a Schedule IV Controlled
Substance.

CIVIL 12-1942 (PG)                    7
(CRIMINAL 04-0414 (PG))

calculation of risks and benefits and not involuntariness that produced the change

of heart. Id. at 140.  Petitioner did not file a petition for a writ of certiorari.

### III.  28 U.S.C. § 2255

This  matter is before the court on motion filed by petitioner Omar R.

Santiago-Miranda on November 16, 2012 to vacate, set aside or correct sentence

pursuant to 28 U.S.C. § 2255, as amended on November 20, 2012, and

superceded on November 21, 2012. (Docket Nos. 1, 3, 4).   A memorandum in

support of the motion was  filed on December 31, 2012. (Docket No. 7).    The

government filed a response in opposition to the motion on January 30, 2013.

(Docket No. 11).   Translations of sworn statements in attachment six of the

original petition were filed on February 12, 2013. (Docket No. 13).  On March 5,

2013, a supplemental motion and memorandum of law including hospital records

on Xanax intoxication and an expert's report on Xanax and the brain was filed, but

later denied. (Docket Nos. 15, 20).  Six months later, on September  16, 2013,

petitioner's sworn statement and a board certified forensic psychiatrist's opinion

on Xanax were filed. (Docket No. 17).

Having considered the arguments of the parties and for the reasons set

forth below, I recommend that the petitioner's amended motion to vacate

sentence (Docket No. 4) be DENIED without evidentiary hearing.

CIVIL 12-1942 (PG)                           8
(CRIMINAL 04-0414 (PG))

Petitioner argues three specific grounds in his motion to vacate.  They are discussed below.

> A. There was a denial of effective assistance of counsel because the trial attorney failed to properly request a withdrawal of petitioner's guilty plea before sentencing plea even though she was informed of his desire to withdraw the guilty plea soon after it was entered.   Such guilty plea was entered involuntarily due to family/attorney pressure, illegal use of drugs, including Xanax,  and bipolar disorder, all of which interfered with his capacity to enter a voluntary and valid plea.

As well as this matter may be argued and arguably substantiated, it is difficult to ignore that the issue was raised at the trial level, raised again and resolved at the appellate level on the merits, and further resolved in relation to the Sixth Amendment claim, in a footnote.  Certainly, petitioner is now filling a vacuum which the court of appeals alludes to in the uncorroborated sworn statements previously submitted before the trial court, and which the trial court never had.  Included in the petition are affidavits of petitioner's mother and aunt in relation to state of mind, as well as petitioner's affidavit reenforcing that he has used excess amounts of Xanax since the 1990s. A group of co-defendants have also exculpated him from participating in the enterprise. I will summarize this information some of which probably could have been submitted to the court originally, but petitioner would allege was not because his trial representation fell short of that required by the Sixth Amendment.

CIVIL 12-1942 (PG)                    9
(CRIMINAL 04-0414 (PG))

a.  Angel A. Figueroa Cruz submitted an affidavit dated April 28, 2009, stating that he pled guilty to Count Five of the indictment, and that petitioner is innocent of the charges, not part the enterprise and not a gunman.  He is willing to testify as to those allegations. (Docket No. 13-1 at 1).

b. Co-defendant Edwin Salinas submitted an almost identical affidavit dated January 27, 2009. (Docket No. 13-1 at 2).

c.  Co-defendant Jose Luis Roman-Rodriguez submitted an almost identical affidavit dated February 24, 2009. (Docket No. 13-1 at 3).

d. Co-defendant Juan Carlos Arce-Valentin attested on October 9, 2007 that he pled guilty to Count Three and knows petitioner through a relative of his who had horses. He is also willing to testify similarly to the others. (Docket No. 13-1 at 4-5). The statement was prepared two months after he was sentenced upon instructions of attorney Lizarribar.

e. Co-defendant Jonathan Ruiz-Castro attested on August 8, 2012 that he knows petitioner and would testify exculpating him (similar to the other affidavits). (Docket No. 13-1 at 6).

f. Ramonita Miranda, mother of petitioner, attested in October, 2012 that before petitioner pleaded guilty, she asked him to plead guilty because she was afraid that he would receive a much longer sentence, probably life.  She called her sister Lucy to convince him to plead guilty.  Petitioner had said that his

CIVIL 12-1942 (PG)                    10
(CRIMINAL 04-0414 (PG))

attorney told him that if he were found guilty, he would get life. (Docket No. 1-2 at 1).

g. Lucy Miranda-Centeno, a clinical psychologist and petitioner's aunt, attested on  November 9 and 16, 2012 that she is a clinical psychologist (with twenty-seven years experience) and the aunt of petitioner.  She was told by a doctor in clinical psychology, Dr. Rafael Padro-Castro,  who had "examined" her nephew in 1980-81 and 1993-94 that he suffered from bipolar disorder. (Docket No. 1-5 at 1).  She attests that because of information given her by his attorney, she put pressure on petitioner to enter a guilty plea because of his exposure to a life sentence. (Docket No. 1-3 at 1). She states that on the day of the plea hearing, she observed that he was under the influence on non-prescribed drugs. She had spoken to him earlier on the day of sentencing by telephone and he had told her that he felt pressured into pleading guilty. She also noted that while talking to him, she noticed he was having mental problems which impeded his "cognitive and decisional functions." (Dr. Rafael Padro-Castro and his records have not been found since counsel Lizarribar received his promises at his office). (Criminal No. 04-414, Docket No. 856 at 3).

h.  Arlene Rivera-Mass, Diplomat of the American Board of Psychiatry and Neurology, and Diplomat of the American Board of Forensic Psychiatry,

CIVIL 12-1942 (PG)                          11
(CRIMINAL 04-0414 (PG))

rendered an expert opinion dated September 16, 2013. (Docket No. 17-2).  She

describes the effects of Xanax on an individual's ability to make decisions.

> "...a person using Xanax, especially in an unsupervised setting, could
> very easily [] unable to make complicated decisions, especially
> regarding the one of accepting culpability over a crime.   We
> understand that under those circumstances a mental health
> professional should has (sic) evaluated Mr. Santiago Miranda in order
> to establish if indeed Mr. Santiago had de (sic) capacity to reach those
> decisions without the influence of being under de (sic) effects of a
> mind altering drug such as Xanax.  Cognitive impairment seen in the
> CNS[6] depression could have altered Mr. Santiago's perception an (sic)
> in such [] Mr. Santiago's capacity to make such decisions.  We need
> to mention that sometimes these changes cannot be noticed by an
> untrained professional, as cognitive impairment may present itself
> very superficial (sic) or hidden."

The expert is willing to testify.

    i.  Petitioner filed a sworn statement dated August 2, 2013.  He started

using Xanax in the early 1990s and by the late 1990s he was using it on a daily

basis.  When arrested, he was under its influence[7].  Since he was addicted to

Xanax, he had no problem getting it while in federal detention.  In the weeks

before trial he increased his doses to 5 to 7 pills a day.  The night before he

pleaded guilty he took six pills.  On the morning of the plea, he swallowed 6 to 7

pills at once.  When he arrived at court, his family and trial attorney pressured

him to plea guilty because otherwise he would receive a life sentence. (Docket No.

---

[6]Central nervous system.

[7]A urine test on that day was positive for cocaine.

CIVIL 12-1942 (PG)                          12
(CRIMINAL 04-0414 (PG))

17-1).  All of this prevented him from willingly accepting his guilt and from fully understanding the warnings and questions made to him by the judge the day he pled guilty.  (None of the information relating to ingesting pills of Xanax the night before and the morning of the change-of-plea hearing was made known to anyone previously).

        j. Maria Milagros Alamo-Clemente attests that from on or about 2000 she was the common-law wife of petitioner, with whom she has a child.  Petitioner never lived with her at Residencial El Flamboyan although he would occasionally spend a night and visit her frequently.  (It appears that while in Puerto Rico, petitioner lived with his aunt and her husband). She also knows that petitioner was never part of the group that sold drugs and was not an enforcer. (Docket No. 1-6 at 7).

    Prison records reflect disciplinary action for possession of controlled substances, possession of a cell phone, and petitioner's placing a lock on his gate to avoid immediate access to his cell.  (Docket No. 1-4).

    These statements are discussed further below in relation to actual innocence and the influence of bipolar disorder and Xanax on voluntariness and knowledge.

        B. There was denial of effective assistance of counsel because the trial attorney failed to investigate Petitioner's criminal record which made him enter  a guilty plea without knowing the full consequences of the same.  Counsel knew of his prior convictions and should have known he did not qualify (for the 324 months of the plea agreement).  In light of her failure to investigate the Petitioner

CIVIL 12-1942 (PG)                    13
(CRIMINAL 04-0414 (PG))

> entered a guilty plea without knowing the consequences of entering the same.   His trial attorney and his appellate attorney were ineffective in that they failed to raise the issue before the district court and/or  to ask that the Petitioner be allowed to withdraw the plea for lack of knowledge of the consequences of the plea.

This argument may appear to have some bite at first blush but ultimately it proves that habeas corpus is an extraordinary which does not invite resolution of this particular sentencing issue, notwithstanding the clear notion that the court would have sentenced him according to the agreement as originally couched, and not to many months more than he bargained for.  Petitioner clearly was aware of the consequences of his plea, the ultimate goal of which was to avoid a life sentence.  The exposure was  always a number of years between ten and life (but closer to life in practical terms) and petitioner was aware that the court was not bound by the recommendation, only that the sentence would never be below, not above, 360 months if the Criminal History Category was above II (assuming acceptance of responsibility).  That it might be above II was obviously contemplated by the parties in the plea agreement.    See e.g. Moreno-Espada v. United States, 666 F.3d 60, 64-65 (1st Cir. 2012); cf. United States v. Ortiz-Garcia, 665 F.3d 279, 288 (1st Cir. 2011).  Had there been no mention of the Criminal History Category falling beyond II, petitioner might have more of an argument.  While counsel might or might not have erred in the sentencing calculation and not taking issue with it in the objection to the pre-sentence

CIVIL 12-1942 (PG)                              14
(CRIMINAL 04-0414 (PG))

investigation report, and while the matter was not raised on appeal, the prejudice

prong of the landmark case of  Strickland v. Washington, 466 U.S. 668, 687, 104

S. Ct. 2052 (1984) is lacking because the sentence received was within the range

of sentences petitioner could have received under Criminal History Category II had

he accepted responsibility, and also under Criminal History Category III if he had

accepted responsibility,   and it was far from the life sentence that he was

avoiding.   Among the sentencing factors that the court carefully weighed were

Johan's murder and a previous attempted murder conviction in the state of Florida

where petitioner entered a guilty plea as to that case and a nolo contendere plea

as to others, as reflected in the PSI which was also before the court of appeals.

In concrete terms, petitioner could not expect the court to ignore his short but

serious criminal record, precluding any degree of leniency beyond the plea

agreement, which the court yet heeded in applying the advisory sentencing

guidelines.   See United States v. Raineri, 42 F.3d 36, 41-42 (1st Cir. 1994).   The

final Offense Level 43 always commanded a life sentence.   The 3-level adjustment

petitioner eliminated from the plea agreement reverted him from a Level 40 to a

Level 43 but the court yet gave some meaning to the plea agreement and

sentenced petitioner within the guideline range corresponding to either a Criminal

History Category II or III at Offense Level 40, and in so doing implementing a

downward variance to petitioner's benefit.   (Criminal No. 04-414, Docket No. 856

at 18-19).   Thus the lack of prejudice.

CIVIL 12-1942 (PG)                          15
(CRIMINAL 04-0414 (PG))


        C.    If there was no criminal record warranting the increase in the sentence, then the trial attorney was ineffective in not properly objecting to the PSR'S inclusion of such convictions in the sentencing calculation.   This prejudiced the Petitioner in that the sentence was increased accordingly.

This argument is addressed generally in the discussion related to Ground Two. The argument that counsel should have argued to exclude the criminal record from the PSI in order to avoid an enhancement in penalty is interesting and invites the court to be less than transparent in the process.  In any event, again, the sentence ultimately adjudged was within the advisory guideline range of 324-405 for Criminal History Category II assuming acceptance of responsibility. And it would be challenging for the court to ignore the 1995 conviction (at age 25) for attempted second degree murder, shooting from a moving vehicle and carrying a concealed firearm, where petitioner pleaded nolo contendere and was adjudicated guilty. (See PSI).  Information about a case generally resulting in nolle prosequi to the lightest charge was not available due to the file being purged.   There was also a nolo contendere conviction for battery in 1994. The three cases were in Florida.  Again, that the estimate of what petitioner's sentence might be was off by 56 months or 20 months is insufficient to invalidate his plea under the circumstances and does not invite a determination of inadequate assistance of counsel.  United States v. Torres-Rosa, 209 F.3d 4, 9 (1st Cir. 2000), citing United States v. Gonzalez-Vazquez, 34 F.3d 19, 22 (11st Cir. 1994).

CIVIL 12-1942 (PG)                    16
(CRIMINAL 04-0414 (PG))

On January 30, 2013,  the government filed a response in opposition to the petitioner's four primary pleadings. It relates some details of the exchange between petitioner and the court at the change of plea hearing, noting the court's inquiry, and petitioner's responses as to his mental state.  (Docket No. 9 at 3-5). The government notes the failure of petitioner to show that his attorney's representation was ineffective, and that the court failed to comply with the core Rule 11 colloquy.  See McCarthy v. United States, 394 U.S. 459, 465, 89 S. Ct. 1166 (1969); United States v. Cotal-Crespo, 47 F.3d 1, 4 (1st Cir. 1995); Nieves-Ramos v. United States, 430 F. Supp.2d 38, 43-44 (D.P.R. 2006). The government also notes some repetition in petitioner's argument that he presented both in the district court and at the court of appeals. The government goes through the affidavits and other information to emphasize the lack of merit in the motion and the lack of support in the affidavits for the remedy of habeas relief. It considers the sentencing issue meritless as well and argues that petitioner is not entitled to an evidentiary hearing based upon his poor showing.

III.  LEGAL STANDARDS

Under 28 U.S.C. § 2255, a federal prisoner may move for post conviction relief if:

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . .

CIVIL 12-1942 (PG)                         17
(CRIMINAL 04-0414 (PG))

28 U.S.C. § 2255(a); Hill v. United States, 368 U.S. 424, 426-27 n.3, 82 S. Ct. 468 (1962); David v. United States, 134 F.3d 470, 474 (1st Cir. 1998).  The burden is on the petitioner to show his entitlement to relief under section 2255, David v. United States, 134 F.3d at 474, including his entitlement to an evidentiary hearing.  Cody v. United States, 249 F.3d 47, 54 (1st Cir. 2001) (quoting United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993)).

Petitioner strenuously seeks that his guilty plea be vacated or that an evidentiary hearing be set to prove his actual innocence and the lack of voluntariness in his guilty plea.  Nevertheless, it has been held that an evidentiary hearing is not necessary if the 2255 motion is inadequate on its face or if, even though facially adequate, "is conclusively refuted as to the alleged facts by the files and records of the case."  United States v. McGill, 11 F.3d at 226 (quoting Moran v. Hogan, 494 F.2d 1220, 1222 (1st Cir. 1974)).  "In other words, a '§ 2255 motion may be denied without a hearing as to those allegations which, if accepted as true, entitle the movant to no relief, or which need not be accepted as true because they state conclusions instead of facts, contradict the record, or are 'inherently incredible.'"  United States v. McGill, 11 F.3d at 226 (quoting Shraiar v. United States, 736 F.2d 817, 818 (1st Cir. 1984)); Torres-Santiago v. United States, 865 F. Supp. 2d 168, 184 (D.P.R. 2012); De-La-Cruz v. United States, 865 F. Supp. 2d 156, 165 (D.P.R. 2012).

A. INEFFECTIVE ASSISTANCE OF COUNSEL

CIVIL 12-1942 (PG)                    18
(CRIMINAL 04-0414 (PG))

"In all criminal prosecutions, the accused shall enjoy the right to . . . the Assistance of Counsel for his defence."  U.S. Const. amend. 6.  To establish a claim of ineffective assistance of counsel, a petitioner "must show that counsel's performance was deficient," and "that the deficiency performance prejudiced the defense." Strickland v. Washington, 466 U.S. at 687, 104 S. Ct. 2052; Rossetti v. United States, 773 F.3d 322, 328 (1st Cir. 2014).  "This inquiry involves a two-part test."  Rosado v. Allen, 482 F. Supp. 2d 94, 101 (D. Mass. 2007).  "First, a defendant must show that, 'in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.'"  Id. (quoting Strickland v. Washington, 466 U.S. at 690, 104 S. Ct. 2052).  "This evaluation of counsel's performance 'demands a fairly tolerant approach.'"  Rosado v. Allen, 482 F. Supp. 2d at 101 (quoting Scarpa v. DuBois, 38 F.3d 1, 8 (1st Cir. 1994)).  "The court must apply the performance standard 'not in hindsight, but based on what the lawyer knew, or should have known, at the time his tactical choices were made and implemented.'"  Rosado v. Allen, 482 F. Supp. 2d at 101 (quoting United States v. Natanel, 938 F.2d 302, 309 (1st Cir. 1991)).  The test includes a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Smullen v. United States, 94 F.3d 20, 23 (1st Cir. 1996) (quoting Strickland v. Washington, 466 U.S. at 689, 104 S. Ct. 2052); see Rossetti v. United States, 773 F.3d at 328.  "Second, a defendant must establish that prejudice resulted 'in consequence of counsel's

CIVIL 12-1942 (PG)                    19
(CRIMINAL 04-0414 (PG))

blunders,' which entails 'a showing of a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."'" Rosado v. Allen, 482 F. Supp. 2d at 101 (quoting Scarpa v. DuBois, 38 F.3d at 8) (quoting Strickland v. Washington, 466 U.S. at 694, 104 S. Ct. 2052); see Padilla v. Kentucky, 559 U.S. 356, 366, 130 S. Ct. 1473 (2010) (quoting Strickland v. Washington, 466 U.S. at 688, 104 S. Ct. 2052); Rossetti v. United States, 773 F.3d at 328;  Argencourt v. United States, 78 F.3d 14, 16 (1st Cir. 1996);  Mattei-Albizu v. United States, 699 F. Supp. 2d 404, 407 (D.P.R. 2010).   However, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Argencourt v. United States, 78 F.3d at 16 (quoting Strickland v. Washington, 466 U.S. at 691, 104 S. Ct. 2052).

In Hill v. Lockhart the Supreme Court applied Strickland's  two-part test to ineffective assistance of counsel claims in the guilty plea context. Hill v. Lockhart, 474 U.S. 52, 58, 106 S. Ct. 366 (1985) ("We hold, therefore, that the two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel."). As the court in  Hill v. Lockhart, supra, explained, "[i]n the context of guilty pleas, the first half of the Strickland [v. Washington] test is nothing more than a restatement of the standard of attorney competence already set forth in [other cases].  The second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally

CIVIL 12-1942 (PG)                    20
(CRIMINAL 04-0414 (PG))

ineffective performance affected the outcome of the plea process." Hill v. Lockhart, 474 U.S. at 58-59, 106 S. Ct. 366.  Accordingly, petitioner would have to show that there is "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59, 106 S. Ct. 366.

I will not outline the plea colloquy since it is clear to the court and to the parties what it reflects. It is also clear to the court of appeals.  Rather the focus must be on the evidence and argument that petitioner now presents in relation to matters which generally have been resolved on appeal, with what appears to be an invitation to complete an incomplete record as to actual innocence as well as voluntariness and knowledge.

Petitioner presents a sworn statement in which he explains his history of drug use, especially right before the unscheduled change of plea hearing.  But at the plea colloquy, he denied taking any pills drugs or medicine in the last 24 hours.  Commonly, prisoners explain to the court the types of medication they are taking, both at arraignment and at change of plea hearings.  Now petitioner changes his version of the plea hearing, the type of hearing where defendants are actually expected to tell the truth, a truth which courts are entitled to rely on, as the court did here.  And petitioner could have admitted to the charges under pressure, but explained to the court that he had taken some type of prescription or non-prescription drugs, or that he had been examined for bipolar disorder in

CIVIL 12-1942 (PG)                    21
(CRIMINAL 04-0414 (PG))

the 80s and 90s, or that his aunt, mother and attorney overwhelmed him. He simply lied about his innocence, under pressure, and lied about his medical history without such pressure.

In any event, it is clear that  the substance of the matters considered  and rejected by the court of appeals must be disregarded by this court.  See United States v. Michaud, 901 F.2d 5, 6 (1st Cir. 1990); Dirring v. United States, 370 F.2d 862, 864 (1st Cir. 1967);  Vega-Colon v. United States, 463 F. Supp. 2d 146, 157 (D.P.R. 2006).  Otherwise, the court, on collateral review,  would instead be acting as a further appellate court.  But the matter does not rest there because petitioner proffers an exception to this rule with additional information in the forms described above.  That is discussed further.

Nevertheless, "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Lefkowitz v. Newsome, 420 U.S. 283, 288, 95 S. Ct. 886 (1975) (quoting Tollett v. Henderson, 411 U.S. 258, 267, 93 S. Ct. 1602 (1973)); see Nieves-Ramos v. United States, 430 F. Supp. 2d at 43; Caraballo Terán v. United States, 975 F. Supp. 129, 134 (D.P.R. 1997).  A review of the additional information supplied on collateral review, as well as other information in the record does not reveal  that petitioner is entitled to relief.  Courts are allowed to rely on the representations of defendants as well as

CIVIL 12-1942 (PG)                    22
(CRIMINAL 04-0414 (PG))

their attorneys, in making determinations of voluntariness and knowledge. See Figueroa-Vazquez v. United States, 718 F.2d 511, 512-13 (1st Cir. 1983). That is what the court did here with the information it had before it.

It is well settled that a court "will not permit a defendant to turn his back on his own representations to the court merely because it would suit his convenience to do so." United States v. Parrilla-Tirado, 22 F.3d 368, 373 (1st Cir. 1994) (quoting United States v. Pellerito, 878 F.2d 1535, 1539 (1st Cir. 1989)). "[I]t is the policy of the law to hold litigants to their assurances at a plea colloquy." Torres-Quiles v. United States, 379 F. Supp. 2d 241, 248-49 (D.P.R. 2005) (citing United States v. Marrero-Rivera, 124 F.3d 342, 349 (1st Cir. 1997)). Thus, the petitioner "should not be heard to controvert his Rule 11 statements . . . unless he [has] offer[ed] a valid reason why he should be permitted to depart from the apparent truth of his earlier statement[s]." United States v. Butt, 731 F.2d 75, 80 (1st Cir. 1984). "[T]he presumption of truthfulness of the Rule 11 statements will not be overcome unless the allegations in the § 2255 motion are sufficient to state a claim of ineffective assistance of counsel and include credible, valid reasons why a departure from those earlier contradictory statements is now justified." United States v. Butt, 731 F.2d at 80 (citing Crawford v. United States, 519 F.2d 347, 350 (4th Cir. 1975)). Petitioner certainly relies on the validity of the reasons why the court should allow him to depart form the apparent truth of his plea statement.

CIVIL 12-1942 (PG)                        23
(CRIMINAL 04-0414 (PG))

The validity of such reasoning for controverting his Rule 11 statements bears some comment.

## B.  XANAX DEPENDENCY

Petitioner does not argue that the court's Rule 11 inquiry fell short. <u>See e.g. United States v. Parra-Ibanez</u>, 936 F.2d 588, 595-96 (1st Cir. 1991).   That inquiry included asking about any medication petitioner was taking at the time of change of plea, and how he was feeling that afternoon, to which he replied that he was fine.  He was also very satisfied with his attorney, notwithstanding the inordinate pressure that he now complains about.   But in this case, the court was not privy to information provided now on collateral review in order to extend the questioning as is its custom and as is required.   And the court did consider what evidence it had before it at sentencing in making its determination, including the mental competency evaluation which it had ordered to be conducted between the plea and sentence.

The court did not make further inquiry beyond petitioner's clear responses to the Rule 11 questioning.   There is no doubt that an indictment such as the one petitioner was subjected to, and the looming sentence, caused grave concern for petitioner, sufficient for him to feel he had to ingest larger amounts than usual of Xanax pills (which were readily available in custody) before either going to trial or pleading guilty. <u>See e.g.  United States v. Savinon-Acosta</u>, 232 F.3d 265, 268 (1st Cir. 2000).   We still do not know what his usual intake of Xanax was in the last

CIVIL 12-1942 (PG)                     24
(CRIMINAL 04-0414 (PG))

twenty or thirty years.  The court had sent petitioner for a mental competency examination, considered by petitioner irrelevant, but this does not mean that the court must obtain expert testimony to inform it of the adverse effects of the medications taken alone or in combination every time an asymptomatic defendant appears in court having ingested prescribed medications, thus the ability of the court to rely on sources readily available and relevant, such as its own observations and that of counsel, as well as the representations of defendants and their attorneys, (not to mention deputy U.S. Marshals, the court's constant eyes and ears).  The PSI made it clear that petitioner has or had been addicted to Xanax since 1990, although he was terminated from supervision in 1994 for shooting a missile into an occupied vehicle, 1994 being  the year he was charged with battery, to which he pleaded nolo contendere and in which he received a light sentence on the misdemeanor.

Certainly, the court has a duty to inquire into a defendant's capacity to plea when the defendant is taking medication, and the better practice would be to identify which drugs a defendant is taking, how recently they have been taken and in what quantity, along with the consequences of taking such drugs. See United States v. Savinon-Acosta, 232 F.3d at 268, citing Miranda-Gonzalez v. United States, 181 F.3d 164, 166 (1st Cir. 1999); United States v. Parra-Ibanez, 936 F.2d at 595-96.  Nevertheless, it is also clear that

CIVIL 12-1942 (PG)                    25
(CRIMINAL 04-0414 (PG))

> [j]udges are not pharmacists or doctors.  Occasionally the aid of an expert may be necessary to explain the likely or actual effects of a particular drug.  However, practical judgments can usually be made. Courts have commonly relied on the defendant's own assurance (and assurances from counsel) that the defendant's mind is clear.  Further, the defendant's own performance in the course of a colloquy may confirm, or occasionally undermine, his assurances.  Conversely, a defendant's prior medical history or behavior may call for heightened vigilance.

> United States v. Savinon-Acosta, 232 F.3d at 268-69, quoted in United States v. Morrisette, 429 F.3d 318, 322 (1st Cir. 2005)

The medical records which were in petitioner's aunt's possession never appeared and have not appeared along with her affidavit. They continue to be promised.  And petitioner's own statements during the plea colloquy confirmed his own assurances as to voluntariness and knowledge.  See e.g.  Blackledge v. Allison, 431 U.S. 63, 74, 97 S. Ct. 1621 (1977); United States v. Pullido, 566 F.3d 52, 59-60 (1st Cir. 2009).   Had the court known of his ingesting numerous Xanax pills at the change of plea or prior to sentencing, further questioning would have followed.  See United States v. Pimentel, 539 F.3d 26, 29 (1st Cir. 1999);  United States v. Parra-Ibañez, 936 F. 2d at 590-91.  In mid-2013, the court is made aware that petitioner has ingested apparently excess amounts of non-prescribed Xanax[8] on a daily basis since the mid 1990s.  And petitioner in 2013 stated that he took a large amount of Xanax pills the night before sentencing and the day of

---

[8]In Puerto Rico, Xanax is commonly referred to in the street as Pali or Palitroque. One pill is rectangular and can be snapped into quarters. Another is oval and can be snapped in half.

CIVIL 12-1942 (PG)                    26
(CRIMINAL 04-0414 (PG))

sentencing. This information still does not add to the equation which petitioner wishes to formulate, since the dosage may be within the therapeutic range or well above it. Laymen are aware that long term and chronic use of a substance causes dependence and laymen are also aware that chronic use of a substance causes tolerance, whether the substance be alcohol[9], cocaine, heroin[10], amphetamine[11] or alprazolam or other scheduled controlled substances.  There is no information presented as to total dosage, milligram per pill, usage on and before the date of sentencing, and what medication has recently been taken for petitioner's bipolar disorder, looking at treatment longitudinally rather than at a cross-section or freeze frame with little contextual information.  Even the expert opinion ignores the known phenomena of tolerance and dependence for someone who is self-medicating and how that has an affect on the mental capacity of that person on a daily basis.   And aside from the mention of X telling Y that petitioner was examined for bipolar disorder by a doctor in clinical psychology, Dr. Rafael Padro-Castro,  in the early 80s and 90s, there is no further  showing or development beyond a promise.   The sentencing court had before it a medical report from which it quoted extensively, noting that there was no indication of "behavioral

_____

[9]See e.g. Clemente v. United States, 772 F. Supp. 20, 26-7 (D. Me. 1991).

[10]See United States v. Zolot, 968 F. Supp. 2d 411, 425 nn. 23-5 (D. Mass. 2013).

[11]See e.g. Cone v. Bell, 556 U.S. 449, 493, 129 S. Ct. 1769 (2009).

and/or irrational dyscontrol." (Criminal No. 04-0414, Docket No. 856 at 11-16).

Information now presented regarding the bipolar disorder and its current functional

consequences is too ethereal to be weighed, particularly   if one considers

petitioner's criminal record.   It is a settled rule that "issues adverted to in a

perfunctory manner, unaccompanied by some effort at developed argumentation,

are deemed waived." Nikijuluw v. Gonzales, 427 F.3d 115, 120 n.3 (1st Cir. 2005);

United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990), cited in United States v.

Diaz-Castro, 752 F.3d 101, 114 n.10 (1st Cir. 2014).   Such development is yet

lacking.   The bipolar disorder and information related to the same, supposedly in

possession of petitioner's aunt, a mental health professional, is still lacking.

Petitioner was totally functional at the change of plea hearing and the court

of appeals placed its imprimatur on those proceedings.   Three time in his life

before March 16, 2007, petitioner had entered the substantial equivalent of a

guilty plea[12], a nolo contendere.   There is no information to be gleaned from any

reliable source that petitioner has not functioned adequately in his surroundings

since the 1990s, regardless of Xanax addiction or bipolar disorder (which he

apparently had diagnosed at age 14 and which allowed him to be gainfully

employed in Florida, have children with different partners, and excellent

relationships with his mother, aunt and their husbands). The previous proceedings

and the current one reflect that petitioner was knowledgeable about the

---

[12]McCarthy v. United States, 394 U.S. at 463 n.7, 89 S. Ct. 1166.

consequences of his plea and suffered the normal pressures that defendants suffer when they are making the difficult decision whether to proceed to trial (along with the 3% of defendants that exercise their right to trial) or whether they plea guilty with or without an agreement.  Lafler v. Cooper, 566 U.S.___, 132 S. Ct. 1376, 1388 (2012).  See e.g. United States v. Marrero-Rivera, 124 F.3d 342, 349-50 (1st Cir. 1997).  Life imprisonment loomed heavily and petitioner's incessant protestations of innocence up to the threshold of trial are the rule and not the exception among defendants.  Petitioner's mother and aunt begged him to avoid life in prison.  His aunt heard petitioner lie to the judge during the plea colloquy.  Both mother and aunt certainly knew of petitioner's Xanax dependency.  (If not, petitioner was simply good at hiding things).  Counsel did not know of the Xanax issue at that time.  Counsel strongly and understandably advised petitioner to take the plea to avoid a life sentence.  Petitioner joined the ranks of the last man standing, and no doubt peer pressure may have lead to his determination to plea guilty although this factor is only mentioned here.  Had he gone to trial, (which he was ready to do notwithstanding his consumption of numerous Xanax pills),  and received a life sentence, the motion would have another tack.  The common-law wife and the co-defendants, willing to testify as to petitioner's actual innocence, would not stand up to a less than withering cross-examination and their statements under penalty of perjury contrast with petitioner's unequivocal statements to the court on March 16, 2007.  Furthermore, the uniform, conclusory

CIVIL 12-1942 (PG)                    29
(CRIMINAL 04-0414 (PG))

and  blanket exoneration of petitioner by five co-defendants  who pleaded guilty

and had been sentenced is inherently suspect[13].  See United States v. del Valle,

566 F.3d 31, 39 (1st Cir. 2009); United States v. Rodriguez-Marrero, 390 F.3d 1,

15 (1st Cir. 2004);  United States v. Montilla-Rivera, 171 F.3d 37, 42 (1st Cir.

1999), citing United States v. Reyes-Alvarado, 963 F.2d 1184, 1188 (9th Cir.

1992); United States v. Montilla-Rivera, 115 F.3d 1060, 1066 (1st Cir. 1997).

Except for the statement of the number one defendant who received a 360-month

sentence, the other statements were composed two to five years after each

defendant was sentenced.  In summary, nothing of import has been presented to

the court for it to consider the exercise of an extraordinary remedy, or even an

evidentiary hearing to develop what appears to be an opportunistic and never-

ending story.  In Bousley v. United States, 523 U.S. 614, 623, 118 S. Ct. 1604

(1998), the Supreme Court explained that, '[t]o establish actual innocence,

petitioner must demonstrate that, in light of all of the evidence, it is more likely

than not that no reasonable juror would have convicted him'."  Lorentsen v. Hood,

---

[13]Co-defendant Angel A. Figueroa-Cruz was arrested on October 22, 2012 for possession of a .40 caliber Glock pistol in his waistband and was sentenced to an additional 36 months for the violation of the terms of his supervised release. The sentence was summarily affirmed on appeal. (Criminal No. 04-414, Docket Nos. 925, 1022).  A similar fate touched prospective witness Jose Luis Roman-Rodriguez who was sentenced to 30 months for violating his terms of supervised release (use of cocaine) on September 17, 2014, after a previous infraction for which he was sentenced to time served.  (Criminal No. 04-414, Docket Nos. 967, 1019).

CIVIL 12-1942 (PG)                          30
(CRIMINAL 04-0414 (PG))

223 F.3d 950, 954 (9th Cir. 2000).   See Rosa-Carino v. United States, 2015 WL

274165 at *10 (D.P.R.  January 22, 2015).

While the evidence presented may be considered new, none of it is reliable.  It is

either suspect, biased or lacking in foundation, and easily impeachable.

## IV. CONCLUSION

Petitioner has not satisfied the first prong of Strickland v. Washington, 466

U.S. 668 at 687, 104 S. Ct. 2052.  The arguably inadequate and poor performance

of his attorney in relation to the error in calculating Criminal History Category did

not contribute to the ultimate outcome of the criminal case.  Three defendants

received sentences of 360 months; two of them, Juan Castillo-Torres and Jose A.

Irizarry-Corchado, were aider and abettors in Johan's murder.  Their  Base Offense

Level was also 43, pursuant to § 2D1.1(d)(1), as a cross-reference was made to

§ 2A1.1 (First Degree Murder) in their plea agreements.  See e.g. Alicea-Torres v.

United States, 455 F. Supp. 2d 32, 39-40 (D.P.R. 2006).  There were simply no

errors of defense counsel that resulted in a violation of petitioner's right to

adequate representation of counsel under the Sixth Amendment. Strickland v.

Washington, 466 U.S. at 686-87, 104 S. Ct. 2052; Moreno-Espada v, United

States, 666 F.3d 60 at  65;  United States v. Downs-Moses, 329 F.3d 253, 265

(1st Cir. 2003).

But even assuming that the actions of defense counsel fell below an objective

standard of performance under Strickland v. Washington, 466 U.S. 668 at 687,

CIVIL 12-1942 (PG)                    31
(CRIMINAL 04-0414 (PG))

104 S. Ct. 2052, there was no resulting prejudice.  And a review of the record, including the motion practice prior to the guilty plea and after, belies the argument of ineffective assistance of counsel.

In view of the above,  I recommend that petitioner Omar R. Santiago-Miranda's original motion to vacate sentence (Docket No. 1), and petitioner's amended motion to vacate sentence (Docket No. 4) be DENIED without evidentiary hearing.

Based upon the above, I also recommend that no certificate of appealability be issued,  because there is no substantial showing of the denial of a constitutional right within the meaning of Title 28 U.S.C. § 2253(c)(2). Miller-El v. Cockrell, 537 U.S. 322, 336-38, 123 S. Ct. 1029 (2003); Slack v. McDaniel, 529 U.S. 473, 484, 120 S. Ct. 1595 (2000); Lassalle-Velazquez v. United States, 948 F. Supp. 2d 188, 193 (D.P.R. 2013).

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within fourteen (14) days of the party's receipt of this report and recommendation.  The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections.  Failure to comply with this rule precludes further appellate review.  See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass.

CIVIL 12-1942 (PG)                    32
(CRIMINAL 04-0414 (PG))

Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

At San Juan, Puerto Rico, this 10th day of February, 2015.

S/JUSTO ARENAS
United States Magistrate Judge